# IN THE DISTRICT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 1:10cr118-MHT |
| | ) | (WO) |
| SHEDRICK MOSLEY | ) | |

## OPINION AND ORDER

Defendant Shedrick Mosley is before the court for sentencing on a revocation petition. The court is confronted with a defendant who appears to have a drug addiction that significantly contributed to the underlying conduct at issue and for whom previous attempts at treatment failed.

This is an outline of the general approach the court deems appropriate to follow in cases such as this. Given the current psychiatric understanding that drug addiction is a disease, albeit a mental one, the court believes that a defendant who suffers from a drug addiction should be properly treated as having a mental disease or illness. Accordingly, where there is a reasonable basis to believe that a defendant's drug

addiction contributed to the conduct underlying his conviction, the court should order a mental-health evaluation, especially where one has not been done previously. Such an evaluation is necessary to aid the court in fashioning an appropriate sentence, by helping to determine (1) how a defendant's substance-abuse disorder may affect his or her culpability for the offense conduct; and (2) what type of treatment, if any, the defendant should receive during supervised release.

    The bottom line is that, in meting out appropriate punishment, the court should make a good-faith attempt to ensure that the defendant is not inappropriately punished for having a disease, and, to the extent appropriate, receives rehabilitative treatment. The mental-health recommendation should focus on these dual, albeit overlapping issues of culpability and treatment: the role, if any, defendant's mental illness played in his charged conduct, and what treatment is recommended for defendant's illness in light of his

individual characteristics and history. Of course, where there have already been unsuccessful efforts at treatment, the recommendation should include what to do in the face of these efforts, such as whether any special treatment or social supports would be beneficial.

For these reasons, and based on the additional factors discussed below, the court will order defendant Mosley committed to the Bureau of Prisons (BOP) for a mental-health evaluation pursuant to 18 U.S.C. § 3552(b) for the purpose of assisting the court in fashioning an appropriate sentence for him.

## I. FACTUAL BACKGROUND

It appears that Mosley has a serious substance-abuse disorder. He began abusing marijuana at 12 and cocaine two or three years later, and has continued using them in the over 20 years since then. Over the years, he has repeatedly been convicted of drug possession and has served much of the last 20

3

years in state prison as a result of these offenses. While in state prison, he attended two drug-treatment programs but reportedly continued to use illegal drugs.

In 2010, he pled guilty in this court to one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1); the encounter leading to this conviction involved an altercation over a box of cocaine. This court sentenced him to 63 months and 23 days in custody, to be followed by three years' supervised release.

Mosley was released from prison in 2015 and placed on supervised release. Early the following year, he admitted to abusing illegal drugs during his supervision and was referred to substance-abuse treatment. He attended an outpatient program but did not complete it due to active abuse of cocaine. Inpatient treatment was then recommended. While he completed a month-long inpatient program, his sobriety did not last long: about two weeks after finishing the program, in October 2016, he again tested positive for

cocaine. He then failed to appear for scheduled drug tests on two consecutive days, thereby also violating the orders of his probation officer. He was jailed for several weeks on three violations, and pled guilty to them. The court put off sentencing on the violations to allow him to attend long-term residential drug treatment.

Mosley completed that program successfully, performed well at his job during the program, and even got married to a person he had met before the program. However, about few weeks after completion of the program and return to his home town, he faced a challenge in his personal life and went back on cocaine. He then was stopped by police and swallowed cocaine immediately before the traffic stop. Police found a personal use amount of crack cocaine in his car and charged him with cocaine possession. A week later, he tested positive for cocaine. The court found him guilty of these three additional violations.

## II. STATUTORY PROVISIONS

In fashioning an appropriate sentence for these violations, the court is bound to impose a sentence that is reasonable. United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005). The factors set forth in 18 U.S.C. § 3553(a) guide the court's determination of the reasonableness of a sentence. First, the court's sentence must be "sufficient, but not greater than necessary, to comply with the [following] purposes": the need for the sentence imposed to punish the offender, protect the public from the defendant, rehabilitate the defendant, deter others, and provide educational or vocational training and medical care. 18 U.S.C. § 3553(a) & (a)(2). In addition, the court must consider: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the kinds of sentences available; (4) the sentencing range

established by the Sentencing Guidelines[1]; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. 18 U.S.C. § 3553(a)(1) & (3)-(7).

The court may order a "study of the defendant" if it "desires more information than is otherwise available to it as a basis for determining the sentence to be imposed;" the order must "specify the additional information that the court needs before determining the sentence to be imposed." 18 U.S.C. § 3552(b). While a presentence study ordinarily "shall be conducted in the

---

1. "Although district courts are no longer bound to follow the Sentencing Guidelines after United States v. Booker, 543 U.S. 220 (2005), they still must consult the Guidelines and take them into account when sentencing defendants." United States v. Todd, 618 F. Supp. 2d 1349, 1352-53 (M.D. Ala. 2009) (Thompson, J.). The court must calculate the applicable range of sentences recommended by the Guidelines. The court may then decide to impose a sentence outside of the Guidelines system, commonly known as a 'variance.'

local community by qualified consultants," the statute authorizes the court to order that the study be done by the BOP upon the finding "that there is a compelling reason for the study to be done by the Bureau of Prisons or there are no adequate professional resources available in the local community to perform the study." Id. At the conclusion of the study period, the BOP "shall provide the court with a written report of the pertinent results of the study and make to the court whatever recommendations the Bureau or the consultants believe will be helpful to a proper resolution of the case." Id.

### III. THE EVALUATION REQUESTED

The court here desires a comprehensive, longitudinal assessment of defendant Mosley for two purposes. First, the court desires an assessment of the role that addiction (or other mental condition, if any) played in the commission of the six violations of which he has now been found guilty, in order to assess

**properly his culpability for those violations and fashion an appropriate sentence. Second, the court desires recommendations as to the type of treatment, if any, Mosley should receive during supervised release. The evaluation should include (1) an assessment of whether he suffers from the disease of drug addiction; (2) if so, the causes and circumstances of that addiction (including whether there are other related or even underlying mental disorders or disabilities); (3) what role, if any, the drug addiction (or other mental disorder) may have played in the conduct charged; and (4) the recommended course of treatment or treatments. As Mosley has previously completed substance-abuse treatment but relapsed, the recommendation should focus on what specialized or supplemental treatment or supports may be necessary in light of those relapses.**

**Substance use disorders are a recognized class of 'mental disorder,' listed in the American Psychiatric Association's Diagnostic and Statistical Manual-V ("DSM-V") alongside other categories such as**

9

Schizophrenia Spectrum and Other Psychotic Disorders, Bipolar and Related Disorders, and Depressive Disorders.[2] As the National Institute on Drug Abuse explains, drug addiction is a mental illness "because addiction changes the brain in fundamental ways, disturbing a person's normal hierarchy of needs and desires and substituting new priorities connected with procuring and using the drug. The resulting compulsive behaviors that override the ability to control impulses despite the consequences are similar to hallmarks of

---

2. DSM-V defines 'mental disorder' as "a syndrome characterized by clinically significant disturbance in an individual's cognition, emotion regulation, or behavior that reflects a dysfunction in the psychological, biological, or developmental processes underlying mental functioning. Mental disorders are usually associated with significant distress or disability in social, occupational, or other important activities. An expectable or culturally approved response to a common stressor or loss, such as the death of a loved one, is not a mental disorder. Socially deviant behavior (e.g., political, religious, or sexual) and conflicts that are primarily between the individual and society are not mental disorders unless the deviance or conflict results from a dysfunction in the individual, as described above." DSM-V at 20.

other mental illnesses." Nat'l Inst. On Drug Abuse, *Is Drug Addiction a Mental Illness?* available at https://www.drugabuse.gov/publications/research-reports/comorbidity-addiction-other-mental-illnesses/drug-addiction-mental-illness (last visited Sept. 22, 2017).

DSM-V similarly notes,

> "An important characteristic of substance use disorders is an underlying change in brain circuits that may persist beyond detoxification, particularly in individuals with severe disorders. The behavioral effects of these brain changes may be exhibited in the repeated relapses and intense drug craving when the individuals are exposed to drug-related stimuli. These persistent drug effects may benefit from lont-term approaches to treatment."

DSM-V at 483.

Given what substance abuse does to the brain, the court is unwilling simply to chalk up Mosley's difficulties to a character flaw and lock him away, at least without first giving proper weight to whether and how that mental disorder affects his culpability for his conduct. Without such an assessment, a court risks effectively punishing a defendant for his or her

11

disease. Cf. Robinson v. California, 370 U.S. 660, 666-67 (1962) (holding that a California law criminalizing addiction to narcotics was cruel and unusual under the Eighth Amendment, and was in the "same category" as laws "mak[ing] it a criminal offense for a person to be mentally ill, or a leper, or to be afflicted with a venereal disease").

That danger is apparent in this case. Defendant Mosley has been found guilty of violations which all appear to be typical of drug addiction: failing to appear for drug testing; possession of what the arresting officer testified was a personal-use amount of cocaine; and testing positive for cocaine. To develop a sentence that is reasonable in light of the § 3553(a) factors--particularly, to ensure that the sentence is "sufficient, but not greater than necessary," "to reflect the seriousness of. . . and to provide just punishment for the offense--the court must consider the extent to which the defendant's misconduct was the product of addiction. § 3553(a) & (a)(2). See

**also** § 3553(a)(1) (requiring consideration of the circumstances of the offense).

In addition to fashioning an appropriate sentence, a comprehensive evaluation is necessary here to determine the appropriate treatment to be provided to Mosley during supervised release. In cases of defendants with apparent substance-abuse disorders, a comprehensive evaluation is necessary in order not only to verify that the defendant has a substance-abuse disorder, but also to determine whether other mental illnesses underlie the defendant's drug addiction--for example, a defendant may be taking drugs in an attempt to treat the symptoms of a mental illness. With such an evaluation, the court may consider whether and which specialized services are needed during supervised release for a defendant to overcome his or her addiction.

The need to determine appropriate treatment is apparent in this case. The court notes that Mosley has repeatedly succeeded at drug treatment but fallen back

into cocaine use; he has been using cocaine for around 20 years and spent many of those years in prison but has not succeeded in breaking his addiction; that he has motivation to stay off drugs and the ability to resist his addiction in a structured setting, but repeatedly falls back into addiction when he loses that structure; that he reportedly has never received a mental-health evaluation that might reveal factors, including other mental illnesses, underlying or contributing to his failure to stay off drugs; and that he has not obtained his general equivalency diploma, despite years spent in federal prison, which raises the possibility of a disability. The court seeks a thorough evaluation in order to determine, in light of his psychological makeup, what if any specialized services may be necessary to keep the Mosley off of drugs and out of the criminal justice system. This assessment will aid the court in its consideration of Mosley's history and characteristics; what treatment, if any, Mosley needs as part of his sentence; and what

services or supports are recommended to assist with Mosley's rehabilitation. See 18 U.S.C. § 3553(a)(1) & (2)(C) & (D).

As discussed above, § 3552(b) authorizes the court to order that the study be done by the BOP upon the finding of a "compelling reason" or where there are no adequate professional resources available in the local community to perform the study. There is little case law defining a "compelling reason" under the statute. See United States v. Donaghe, 924 F.2d 940, 945 (9th Cir. 1991) (noting a lack of case law on this issue). In this case, the court seeks a comprehensive, longitudinal evaluation of the defendant's mental health, including whether he has any co-occurring mental illnesses in addition to his substance abuse. There are no locally available resources that could provide such an evaluation in the jail where Mosley is housed (or in any other local jail, for that matter). Such an extended and comprehensive evaluation is simply not feasible given the restrictions on access to

15

prisoners in a jail environment. Furthermore, releasing Mosley from jail in order to obtain such an evaluation in the community is not an option due to the high risk that he would begin using cocaine again. Thus, the court finds both compelling reasons and that there are no adequate professional resources available in the local community to perform the study.

This court has held that due process requires the government to "offer evidence to establish the presence of compelling governmental interests which would require [the defendant's] competency evaluation to be conducted pursuant to a custodial commitment at a BOP facility, rather than on an outpatient basis." United States v. Mock, No. 2:12cr104-MHT, 2014 WL 1491198, at *3 (M.D. Ala. Apr. 15, 2014) (Thompson, J.); cf. United States v. Song, 530 Fed. Appx. 255 (4th Cir. 2013) (finding similar due process requirements for the decision to detain individual for pretrial evaluation of insanity defense); United States v. Deters, 143 F.3d 577 (10th Cir. 1998) (same); cf. also United States v.

Neal, 679 F.3d 737, 742 (8th Cir. 2012) (same, for evaluation of competency to stand trial). Although Mosley is currently incarcerated, due process concerns may nonetheless be implicated by the decision to transfer him to BOP for an evaluation, rather than ordering a local, non-custodial evaluation. Cf. Vitek v. Jones, 445 U.S. 480, 491 (1980) (holding that although a conviction extinguishes a prisoner's liberty interest to be free from confinement, a prisoner retains certain due process rights that require "the transfer of a prisoner from a prison to a mental hospital [to] be accompanied by appropriate procedural protections"). However, because Mosley agreed at a hearing on the record to his transfer for the evaluation, any such concerns are unwarranted here.

\* \* \*

Accordingly, it is ORDERED as follows:

(1) Pursuant to the provisions of 18 U.S.C. § 4241 and §§ 4247(b) & (c), the United States Marshal for

17

this district shall immediately remove defendant Shedrick Mosley to the custody of the warden of an appropriate institution as may be designated by the Attorney General, where he is to be committed for the purpose of being observed, examined, and treated by one or more qualified psychiatrists or psychologists at the institution. The statutory time period for the examination shall commence on the day defendant Mosley arrives at the designated institution. The examination shall be conducted in the suitable facility closest to the court, unless impracticable.

(2) Pursuant to 18 U.S.C. § 3552(b), the examining psychiatrists or psychologists shall evaluate defendant Mosley's psychological condition for the purposes of sentencing and shall include their findings in a report to be presented to this court.

(a) To assist the court in assessing defendant Mosley's culpability, the study shall discuss defendant Mosley's mental-health history and characteristics, and shall particularly address (i) whether he suffers from

a substance-abuse disorder or other mental disorder or disability and if so, which one(s); (ii) what role, if any, his substance-abuse disorder or other mental disorder or disability played in his commission of the six violations of supervised release for which he now faces sentencing; and (iii) how his substance-abuse disorder or other mental disorder or disability impacts his ability to refrain from using illegal substances.

  (b) In addition to assessing whether defendant Mosley has a substance-abuse or other mental disorder or disability, the study shall provide recommendations for treatment to be provided to defendant Mosley while on supervised release.  The study should address: (i) in light of his repeated failure to stay off drugs, his personal characteristics, history, and circumstances, and his mental health, which treatment modalities, treatment settings, and supportive or other services are likely to be most effective in helping defendant Mosley to stay off of illegal drugs and to learn to respond to life stressors without resorting to

substance abuse; and (ii) whether defendant Mosley has any cognitive or learning disabilities that may have impacted his recovery from substance abuse and/or his lack of educational achievement, and if so, what resources are recommended to address those concerns.

(c) Finally, the study shall discuss any other matters the BOP believes are pertinent to the sentencing factors set forth in 18 U.S.C. § 3553(a).

DONE, this the 25th day of September, 2017.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**