IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 1:10cr118-MHT |
| | ) | (WO) |
| SHEDRICK MOSLEY | ) | |

## OPINION

Defendant Shedrick Mosley pled to or otherwise was found guilty of all six violations in an amended petition to revoke his supervised release. At the resumption of his sentencing on May 7, 2018, the court revoked his supervised release and sentenced him to a term of imprisonment of time served--approximately nine months--to be followed by two years and two months of supervised release. The court orally gave its reasons for doing so at sentencing; however, for the sake of clarity, this opinion set forth those reasons in more detail.

## I. BACKGROUND

In 2010, Mosley pled guilty in this court to one count of Felon in Possession of a Firearm, *see* 18 U.S.C. § 922(g)(1), which stemmed from an encounter involving an altercation over a box of cocaine. This court sentenced him to 63 months and 23 days in custody, to be followed by three years of supervised release.

Mosley was released from prison in 2015 and placed on supervised release. Early the following year, he admitted to abusing illegal drugs during his supervision and was referred to substance abuse treatment. He attended an outpatient program but did not complete it due to active abuse of cocaine. Inpatient treatment was then recommended. While he completed a month-long inpatient program, his sobriety did not last long; about two weeks after finishing the program, in October 2016, he again tested positive for cocaine. He then failed to appear for scheduled drug

tests on two consecutive days, also violating the orders of his probation officer. A revocation petition was filed charging him with (1) using cocaine, (2) not appearing for drug testing, and (3) not following the instruction of the probation officer by not attending drug testing when ordered to do so. He was jailed for several weeks pending resolution of the violations, and then pled guilty to them. The court put off sentencing to allow him to attend long-term residential drug treatment.

Mosley completed that program successfully, performed well at his job during the program, and even married a person he had met before the program. However, a few weeks after completion of the program and return to his home town, he faced a challenge in his personal life and went back on cocaine. He then was stopped by police and swallowed cocaine immediately before the traffic stop; police found a personal use amount of crack cocaine in his car and charged him with

cocaine possession. A week later, he tested positive for cocaine. The court found him guilty of three additional violations: (4) committing conduct constituting a state offense (that is, drug possession), (5) possession of cocaine, and (6) use of cocaine.

At sentencing in August 2017, the court decided to continue sentencing on the six violations and to order a presentence mental-health evaluation at a Bureau of Prisons (BOP) facility, pursuant to 18 U.S.C. § 3552(b), to aid in fashioning an appropriate sentence. In explaining its reasons for doing so, and outlining its general approach in similar cases going forward, the court held that, where there is a reasonable basis to believe that a defendant's mental disease or defect--including a substance abuse disorder--contributed to the conduct underlying his or her conviction, the court should order a mental-health evaluation. *See United States v. Mosley*, 277 F. Supp.

3d 1294, 1295 (M.D. Ala. 2017) (Thompson, J.). Such an evaluation, the court reasoned, is necessary to aid in fashioning an appropriate sentence, by helping to determine (1) how a defendant's mental disease or defect may mitigate his or her *culpability* for the offense conduct; and (2) what type of *treatment*, if any, the defendant should receive during supervised release. *See id.* at 1295-96. "The bottom line is that, in meting out appropriate punishment, the court should make a good-faith attempt to ensure that the defendant is not inappropriately punished for having a disease, and, to the extent appropriate, receives rehabilitative treatment." *Id.* at 1296. The mental-health evaluation was therefore to focus on these dual, overlapping issues of culpability (in the sense of possible mitigation) and treatment: the role, if any, Mosley's mental illness played in his charged conduct, and what treatment is recommended for his illness in light of his individual characteristics and history.

BOP submitted the results of that study in February 2018, *see* Psychiatric Report (doc. no. 183), and, after a brief continuance due to logistical difficulties in transporting Mosley back to local custody, he came back before the court for sentencing in light of the BOP's report.

## II. LEGAL FRAMEWORK

In fashioning an appropriate sentence for violations of supervised release, the court is bound to impose a sentence that is reasonable. *See United States v. Sweeting*, 437 F.3d 1105, 1106-07 (11th Cir. 2006). The factors set forth in 18 U.S.C. § 3553(a) guide the court's determination of the reasonableness of a supervised-release-violation sentence. *See id.* First, the court's sentence must be "sufficient, but not greater than necessary, to comply with the [following] purposes," 18 U.S.C. § 3553(a): the need for the sentence imposed to punish the offender,

**protect the public from the defendant, rehabilitate the defendant, deter others, and provide educational or vocational training and medical care.** *See* **18 U.S.C. § 3553(a)(2). In addition, the court must consider: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the kinds of sentences available; (4) the sentencing range established by the Sentencing Guidelines; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.** *See* **18 U.S.C. § 3553(a)(1) & (3)-(7).**

**Although the Sentencing Guidelines are merely advisory in the context of supervised-release-violation sentencing,** *see United States v. Hofierka*, **83 F.3d 357, 361 (11th Cir. 1996), the court is still bound by § 3553(a)(4), as indicated above, to consider the**

applicable Guidelines sentencing range among other factors. In the context of revocation, that range is found by inputting the grade of violation and the defendant's criminal history category. The grade of violation in a petition that involves multiple violations is determined by the grade of the most serious offense. *See* U.S.S.G. § 7B1.1(b). The defendant's criminal history category is the category applicable at the time he or she was sentenced. *See* U.S.S.G. § 7B1.4(a).

## III. ANALYSIS

The court begins its analysis by calculating the applicable guidelines range. The grade of the most serious violation in this case is Grade B. *See* Amended Petition to Revoke Supervised Release (doc. no. 157) at 2; U.S.S.G. § 7B.1(a)(2). Mosley's criminal history category as determined at sentencing for his original offense is V. A criminal history category of V and

Grade B violation establish an advisory sentencing range of 18-24 months.

If supervised release is revoked, the court may also require any term of imprisonment to be followed by a second term of supervised release, the length of which shall not exceed the length of supervised release authorized by statute for the original violation, less any term of imprisonment imposed for revocation. *See* 18 U.S.C. § 3583(h). The maximum term of supervised release for Mosley's original violation was three years, *see* 18 U.S.C. § 3583(b)(2), so the maximum combined length of any term of imprisonment *and* any additional term of supervised release is three years. In addition, the Guidelines state that, upon finding a Grade A or B violation, the court shall revoke supervised release. U.S.S.G. § 7B1.3.

After considering the factors enumerated in § 3553(a), and the arguments of counsel, the court concluded that a sentence of revocation and time served

9

(approximately nine months), to be followed by two years and two months of highly structured supervised release, was appropriate.

In arriving at this sentence, the court relied heavily upon the findings and treatment recommendations in the BOP presentence study report prepared by forensic psychologist Dawn Graney, Psy.D. She diagnosed Mosley with cocaine use disorder, severe; cannabis use disorder, mild; major depressive disorder, recurrent, mild; posttraumatic stress disorder (PTSD); and antisocial personality disorder. *See* Psychiatric Report (doc. no. 183) at 18.

According to the report, Mosley experienced trauma and was exposed to substance abuse, violence, and other criminal activity from a young age--both from the neighborhood in which he grew up, and directly from family members involved in those activities. At age nine, he was hit by a car and hospitalized for an extended period of time, requiring two years of

rehabilitation in order to walk normally. At age 14, he witnessed a friend age 16 or 17 have his 'brains shot out' at close proximity. These early events, the Dr. Graney opined, resulted in PTSD and likely contributed to his early, heavy substance abuse: by age 12, he was smoking marijuana on a daily basis; by age 14, his uncle had introduced him to regular cocaine use; by age 16, he had also started to use crack cocaine; in addition, Mosley feels an ongoing and sometimes overwhelming sense of guilt regarding his friend's death, after which the friend's sister drove three hours to Mosley specifically to berate and blame him; and, because of the early shooting incident and other traumatic experiences, Mosley's hometown of Dothan is filled with negative associations and PTSD triggers.

With regard to Mosley's substance abuse, Dr. Graney further opined: "Clearly the defendant's severe Cocaine Use Disorder played a significant role in his many

11

cocaine-related violations." *Id.* at 19-20. Moreover, she continued, his underlying mental illnesses appear to contribute to his substance abuse: "his depression and trauma-related symptoms exacerbate his recurrent substance use ..., as the defendant becomes overwhelmed with emotional distress and looks to drug use for relief, identifying drugs as the only form of coping he has ever really known." *Id.* 20. That is, his "depressive and trauma-related symptoms, such as negative emotions, self-defeating thoughts, social withdrawal, fatigue, etc., ... contribute to the desire to use drugs and weaken his resolve to abstain from drugs." *Id.* at 19. Although Graney concluded that Mosley's prognosis remains "guarded," and that treatment setbacks and relapses should be anticipated as part of his disease, she also noted that he "appears highly motivated for treatment in order to make positive changes for himself and his new family." *Id.* at 22.

In light of these findings, Dr. Graney recommended that Mosley participate in a long-term, residential substance abuse treatment program--if possible, Fellowship House, Birmingham, where he previously made significant progress, albeit followed again by relapse. In addition, she recommended that Mosley receive ongoing aftercare following residential treatment; individual and group therapy, including a therapist he can meet with periodically; continued psychiatric medication, which should be routinely monitored by a medical provider; a full medical workup; and educational training and vocational training. Importantly, as the parties have discussed at length at prior hearings, she suggested that Mosley be strongly encouraged to relocate with his wife away from the city of Dothan.

Mosley asked that he be sentenced to a time served--approximately nine months--and that while on supervised release he participate in the course of

treatment recommended by BOP.[1] In support of this position, he argued--citing the BOP report--that his substance abuse and other mental illness, as well as his background more generally, mitigated his culpability for the violations, all of which were directly related to his substance abuse disorder. In addition to mitigating Mosley's violations for drug use and possession, defense counsel explained that his disorder also contributed to his failure to follow the instructions of his probation officer, insofar as he failed to report in order to avoid a positive drug screen. Further, Mosley contended that further incarceration at this time would destroy the progress

---

1. The one difference from the BOP recommendation is that Mosley initially argued that he should be placed at a residential treatment center in Dothan, rather than Birmingham, Alabama, in order to be closer to his family. However, at the sentencing hearing, defense counsel recognized the court's significant concerns regarding Mosley's potential of relapse in the Dothan area, and argued in the alternative that he should be placed at Fellowship House, Birmingham, as per BOP's recommendation.

he made at the BOP facility and while subsequently in federal custody, since the length of that incarceration would likely mean he would be placed in a local jail, where there is a significant possibility that he would not be able to receive adequate mental-health treatment or perhaps even his prescribed medication.[2]

At the sentencing hearing, the government forcefully responded that Mosley has repeatedly violated his conditions of supervised release, and that while it endorsed the course of treatment recommended

---

2. The court has recently heard multiple allegations that criminal are not receiving their medications as prescribed while in local custody at county jails. *See, e.g.*, *United States v. McNeal*, No. 2:15cr199, 2018 WL 1811474 (M.D. Ala. Apr. 17, 2018) at *2 (noting indications that defendant, during two separate periods, was not receiving prescribed medications after being returned to local custody from BOP competency restoration treatment). Furthermore, the court has learned that detainees held in local jails frequently have their prescribed psychiatric medication abruptly changed or terminated in jail because the jails only keep certain drugs on the formulary, or the local physician decides upon the detainee's arrival that the medication is unnecessary--and these abrupt changes can cause significant problems.

by BOP in order to prevent Mosley from violating the law again, an additional term of incarceration was necessary to reflect the seriousness of the violations and to promote respect for the law. The government initially requested a guidelines sentence of 18-24 months. However, upon recognizing that such imprisonment would limit any period of supervised release to little more than a year, *see* 18 U.S.C. § 3583(h), and concluding that such a short term would be insufficient to ensure that Mosley could function well without supervision, the government instead recommended an additional term of four to six months. That is, the government astutely recognized that, because any term of imprisonment and supervised release must not cumulatively exceed three years, the court was faced with the task of balancing the need for punishment against the potential length of treatment. The government ultimately took the position that the interests of the public would be better served by

limiting an additional term of punishment to six months so that he could participate in approximately two full years of supervised release.

Although the court declined to sentence Mosley to an additional term of imprisonment, it agreed with the government that the need for punishing Mosley must be directly balanced against the benefits of his continued treatment, given that (1) the length of supervised release is directly limited by the length of imprisonment, and (2) any imprisonment in a local jail could significantly interrupt or undo his treatment progress. In addition, the BOP report provided extensive and compelling evidence that Mosley's substance abuse disorder, PTSD, depression, and other mental illness significantly contributed to the offense conduct, and that these conditions must be addressed through more targeted treatment if he is to have any hope of ending the cycle of depression, relapse into drug use, and incarceration.

Despite the court's inclination, based on the above factors, to sentence Mosley to time served and get him back into treatment as soon as possible, the court also had to confront this question: If Mosley previously participated in treatment at Fellowship House (as well as other programs), and again reverted to the use of drugs, why should he be expected to fare any better this time? Defense counsel was presented with this question at the sentencing hearing, and in response solicited testimony (albeit informal and unsworn) from Kady Abbott, Clinical Director at Fellowship House. Abbott echoed Dr, Graney's observation that, given that substance abuse disorder is a chronic 'disease,' the fact of relapse is to be expected and not to be regarded as a complete 'failure' in treatment. Moreover, Abbott noted that her treatment center maintains clients' past treatment records and that, when a client returns for additional treatment, clinicians are able to use records of that past

experience in order to better tailor a new treatment program.

Perhaps even more importantly, however, defense counsel argued that this attempt at treatment was different in light of the longitudinal evaluation that Mosley received at BOP, which uncovered the existence and extent of his underlying depression and PTSD, and provided several specific treatment recommendations. Future treatment will therefore more likely succeed because it will target these "root problems"; indeed, Mosley is already receiving medication for his depression, where he had not previously.

While the court was mindful of both Dr. Graney's and Director Abbott's caution that further treatment setbacks may occur, it was also mindful of their advice that relapse is to be expected as part of the disease and not to be regarded as a complete 'failure' in treatment. Therefore, having considered the full picture--in particular, the recent uncovering of some

of the root causes of Mosley's drug addiction and Mosley's current expression of a strong desire to stay sober in order to support his family--the court was satisfied that there is hope for Mosley's continued treatment.

In light of how Mosley's substance abuse disorder and other mental illness apparently contributed to his ongoing non-compliance with conditions of supervised release, and because significant, tailored treatment to prevent future violations is in the interests of both Mosley and the community, the court concluded that a sentence of time served, to be followed by two years and two months of highly structured supervised release, was "sufficient, but not greater than necessary, to comply with the ... purposes" set forth in 18 U.S.C. § 3553(a).

DONE, this the 7th day of May, 2018.

                                /s/ Myron H. Thompson
                             **UNITED STATES DISTRICT JUDGE**